UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JACK J. BATTLE,<br><br>                Petitioner,<br>v.<br>WARDEN BYRNE, *et al.,*<br><br>                Respondents. | Case No. 3:16-cv-00242-MMD-WGC<br><br>ORDER |

This *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 comes before the Court for consideration of the remaining grounds of the petition on the merits. (ECF No. 1.) Respondents have answered (ECF No. 14), and petitioner has replied (ECF No. 15).

I. **BACKGROUND**

On July 6, 2011, petitioner went to trial on one count of burglary and one count of robbery with use of a deadly weapon with assistance of a child for the theft of three items from a Toys 'R' Us store on the evening of February 1, 2011. (Exhs. 10 & 11.)[1]

At trial, store manager Wendy Martinez testified that on the night in question, petitioner came into the store by himself and headed into the electronics department. (Exh. 11 (Tr. 116-18).) A short time later, a group consisting of one adult woman and three or four younger girls ranging from 7 to 17 entered and walked into a different part of the store. (*Id.* at 122.)

---
[1]The exhibits cited in this order, which comprise the relevant state court record, are located at ECF Nos. 9-10.

Petitioner returned to the front of the store with two large items. (*Id.* at 123.) Martinez offered him a cart, which he accepted and began pushing toward the door. (*Id.* at 123-25.) Petitioner remained standing by the cart, near the door, which made Martinez suspicious. (*Id.* at 125-27.) After asking Martinez why she was looking at him, petitioner said, "I can take anything I fucking really want to." (*Id.* at 128-29.)

Petitioner went back into the store and returned with the woman and girls. (*Id.* at 130-32.) The minors were carrying three items of store merchandise, and the group walked toward the entrance door. (*Id.* at 131-34.) The girls placed the items on a shelf. (*Id.* at 134-35.) As Martinez went to retrieve them, the girls grabbed the items back and said, "[w]e're going to go ahead and take this." (*Id.* at 135-36.) The group, including petitioner, then started walking toward the entrance door again. (*Id.* at 136.) Martinez, who was between the group and the exit door, told them they had to go out the exit and that she "would like to have [her] merchandise back if they were not going to pay for it." (*Id.*) As the group turned and walked toward the exit door, petitioner got in front, approached Martinez, and said, four times, "Don't touch my fucking girls." (*Id.* at 137-38.) As petitioner approached, Martinez observed something silver or gray in his hand, which she "had no doubt in [her] mind" was a knife. (*Id.* at 138-41.) The rest of the group passed around Martinez and petitioner and out the door, merchandise still in hand. (*Id.* at 141.)

Martinez followed the group as they left. (*Id.* at 141.) Petitioner told her, again, "I told you I could take whatever I fucking well wanted." (*Id.* at 142.) The woman and children got into a car and left. (*Id.* at 143-44.) As they did, petitioner walked back into the store and stood between Martinez and the window, apparently in an attempt to block Martinez from seeing their car. (*Id.* at 144.) Petitioner said a third time, "I told you I could take whatever I fucking well wanted to." (*Id.* at 145.)

On cross-examination, Martinez testified that she was not 100% sure petitioner had had a knife; on redirect she stated she was only 35% sure. (*Id.* at 172-78, 185.)
///

2

Following this testimony, the State amended the information to remove the deadly weapon enhancement. (Exh. 14.)

Petitioner also took the stand. Before he did, a hearing took place in his presence about whether the State could ask him about an incident that occurred four days before the Toys 'R' Us incident in which petitioner and his children had stolen items from a K-Mart. (Exh. 12 (Tr. 20).) The court held that the State could not go into the incident unless the petitioner opened the door by talking about it. (*Id.* at 21.) The court admonished petitioner to listen closely to his attorney's questions because if he started talking about something he was not asked, he might open the door. (*Id.*)

On the stand, petitioner testified that he did not know his daughters were taking unpaid items out of the store and that he believed Martinez might put her hands on them. (*Id.* at 33-35.) He testified that after the confrontation with Martinez, he got into his car and sped home, where the girls had already arrived. (*Id.* at 38.) Counsel then asked petitioner, "[n]ow, when you arrived were the children — you said the children are already there. Were they — you said they were in the living room?" (Exh. 12 (Tr. 39).) Petitioner responded:

> Yeah, my girlfriend made pozole, so everybody was making dinner for — bowls and they were all laughing and giggling and being kids. So I came through the door, first things first: what the hell's going on? are you guys idiots? I cursed at them, I did. And I was very upset, pissed off. Me and my oldest daughter, Raven, who was also with me at the Toys 'R' Us, I was mad at her. I was yelling at her to the top of my lungs. We got in a fight. 'Cause nobody has anything dad. Nobody has anything dad. We didn't take nothing dad. Right. So I'm very, very, very, very mad. So I go upstairs. I go into my bedroom. I shut the door so I could take a time out for me because I know ***I've never had any problems with my kids doing anything like this of this nature***. They're kids. And I said, you know what, that's it man, now I'm pissed off. So I went to the room I laid down."

(*Id.*) (emphasis added).

Before cross-examination, the court conducted a bench conference in which the prosecutor argued that by claiming his children had never stolen anything, petitioner had opened the door to the K-Mart incident. (*Id.* at 49-50.) Defense counsel objected, arguing the evidence was not admissible because petitioner had not put his character at

3

issue and the incident reflected only on the children's characters. (*Id.* at 52-53.) The court deferred its ruling but it indicated it would probably come in as impeachment evidence, not character evidence. (*Id.* at 53-54.)

The prosecutor then began cross-examination, during which she asked the petitioner whether he had "ever been with [his] children walking down an aisle where they've stole something other than a grape." (*Id.* at 125.) Petitioner answered no. (*Id.*) The prosecutor again asked the court, during a bench conference, whether she could go into the K-Mart case. (*Id.* at 126.) Petitioner's counsel indicated that he had never seen the police report for the case.[2] (*Id.* at 126-27.) The court again deferred ruling so that defense counsel could look at the report. (*Id.* at 127-30.)

Following further cross-examination, the court held a hearing in petitioner's presence. (*Id.* at 135.) At the outset, the court advised petitioner not to interrupt. (*Id.*) Petitioner, nevertheless, interrupted several times. (*Id.* at 136, 138.) The court then ordered that he be removed from the courtroom for the duration of the hearing. (*Id.* at 138-39.)

Before petitioner was removed, the prosecutor argued that, although the police report did not identify who was with petitioner during the K-Mart incident, evidence was introduced at his trial that the children were there and participated in the theft, and petitioner had moreover admitted their involvement in a statement to the police. The prosecutor made her offer of proof based on representations by the district attorney who had prosecuted the K-Mart case. (*Id.* at 137.) Petitioner, as he was being removed, interjected several times that the children were not involved. (*Id.* at 138-39.)

Petitioner's counsel argued that the only evidence of the incident was the police report and that the report did not identify who was with petitioner. (*Id.* at 140.)

The trial court held that the district attorney's representations were sufficient and concluded that the State could ask petitioner about the incident insofar as it involved

---

[2]The prosecutor indicated she had not disclosed the report earlier because it was admissible only as impeachment evidence and she did not know petitioner was going to testify. (Exh. 12 (Tr. 126-27).)

4

use of his children during a theft and threats petitioner made to K-Mart employees that they could not stop him from taking anything. (*Id.* at 140-47.) The court barred presentation of any extrinsic evidence about the incident or questions regarding the use of a knife during it. (*Id.* at 142-47.)

Petitioner was brought back into the courtroom, and the court admonished him about his conduct. As the court did, petitioner continued to interrupt. (*See id.* at 148-53.) The jury was then brought back in and instructed that the evidence it was about to hear could be considered only insofar as it bore on petitioner's credibility. (*Id.* at 154.)

The prosecutor asked petitioner whether he recalled being at K-Mart when one of his children, in his presence, took a bottle of perfume and he took a bottle of cologne and a jug of milk. (*Id.* at 155.) Petitioner said no, that he took the milk and the cologne, his kids weren't involved but that he did steal the jug of milk in front of one of the children, "which was not appropriate." (*Id.* at 155-56.) When the prosecutor began to ask, "isn't it true that when employees confronted you and tried to stop you, that you told them that you would take — that," petitioner interrupted, stating, "Oh there was a knife involved in that one." (*Id.* at 156.) Petitioner made several more comments about the knife, despite there being no questions about it and despite counsel trying to stop him. (*Id.* at 156-58). The court immediately struck everything petitioner said — including his several knife comments — as nonresponsive. (*Id.* at 156-58.)

Following the three-day trial, petitioner was acquitted of burglary but convicted of robbery with use of a child. (Exh. 15.) The state court sentenced petitioner to a term of five to fifteen years on the robbery charge and a consecutive term of two to five years on the use-of-child enhancement. (Exh. 19.)

Petitioner appealed. (ECF No. 20 & 21.) The Nevada Supreme Court affirmed. (ECF No. 23.) Thereafter, petitioner filed a state postconviction petition for habeas corpus relief. (ECF No. 25.) After the trial court denied the petition, the Nevada

///

///

5

Supreme Court reversed and remanded for appointment of counsel.[3] (Exh. 33.) After counsel was appointed and filed a supplemental memorandum in support of the petition (Exhs. 34 & 36), the trial court again denied the petition (Exh. 39). On appeal, the Nevada Court of Appeals affirmed. (Exh. 43.)

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in May 2016. The petition asserted three grounds for relief. After respondents moved to dismiss Grounds 1(b), 2(b), 2(c) and 2(d) as unexhausted (ECF No. 9), petitioner filed a notice electing to "withdraw unexhausted grounds 1(b) and (2) . . . and . . . sole[l]y proceed on exhausted Ground 1(a)," (ECF No. 11). The Court entered an order dismissing Ground 1(b) and Ground 2, after inferring that petitioner also wanted to proceed on exhausted Ground 3 in addition to Ground 1(a). (ECF No. 13.) Respondents thereafter answered the petition, and petitioner replied.

As a preliminary matter, the Court concludes that Ground 2 was improperly dismissed in its entirety. Petitioner exhausted Ground 2(a) in state court. He moved to withdraw "unexhausted ground[] . . . 2." Liberally construing the petitioner's filing, the Court concludes that his intent was to withdraw only the unexhausted portions of Ground 2 — Grounds 2(b), 2(c) and 2(d). Accordingly, the Court hereby reinstates Ground 2(a) and will consider that claim on the merits with the other surviving claims of the petition.[4]

**II.    STANDARD**

28 U.S.C. § 2254(d) provides the legal standards for this court's consideration of the merits of the petition in this case:

---

[3]The Court notes that while the Nevada Supreme Court concluded appointment of counsel was necessary in light of petitioner's allegations of mental health issues, the trial court and the Nevada Court of Appeals later found that, even with assistance of counsel, petitioner had failed to substantiate his claim that he had mental health issues. (Exhs. 33, 39 & 43.)

[4]The Court does so without seeking an answer from respondents, particularly as Ground 2(a) is essentially covered in Ground 1. Petitioner has filed repeated motions to expedite in this case, indicating that he would not be in favor of further delay. The Court concludes that it does not require an answer to Ground 2(a) in order to evaluate its merits.

6

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted.)

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court

identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

As the state courts reached the merits of petitioner's claims, their decisions are entitled to deference under AEDPA and may not be disturbed unless they were ones "with which no fairminded jurist could agree." *Davis v. Ayala*, -- U.S. --, 135 S. Ct. 2187, 2208 (2015).

///

## III. DISCUSSION

### 1. Ground 1(a)

In Ground 1(a), petitioner asserts that his rights to due process, a fair trial and effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments was violated by cumulative error. (ECF No. 1 at 3.) The only cumulative error claim exhausted in state court was a claim based on the cumulative error of counsel. (ECF No. 13 at 1.) Thus, that is the only claim remaining to be considered on the merits.[5]

Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000) (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id.* To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

///

---

[5]The Court notes that Ground 1(a) can be read to assert a general cumulative error claim and that the Court did not explicitly dismiss that portion of Ground 1(a) in its order on the respondents' motion to dismiss. However, the claim is unexhausted and petitioner's notice clearly reflected a desire to proceed only on his exhausted claims. (ECF No. 11.) Thus, any general claim of cumulative error contained in Ground 1(a) has been effectively withdrawn.

Ineffective assistance of counsel under Strickland requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 189. The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 190 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Id.* at 181-89. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," id. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the

'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* at 105 (internal quotations and citations omitted).

As respondents point out, the petition itself does not identify the alleged errors comprising petitioner's cumulative error claim. In his state post-conviction petition and appeal, petitioner argued that: (1) trial counsel was ineffective for failing to have a competency evaluation performed on him; (2) trial counsel failed to consult with petitioner's counsel in the K-Mart case and review Martinez's testimony at a *Petrocelli* hearing therein in order to effectively cross examine her; (3) trial counsel's failure to investigate the K-Mart case also prevented him from effectively advising petitioner with respect to his decision to testify, including explaining what facts or statements might open the door to questions about the K-Mart incident; (4) trial counsel failed to explain the scope of the State's impeachment involving the K-Mart case; and (5) appellate counsel failed to file a petition for rehearing.

The Nevada Court of Appeals upheld the rejection of petitioner's cumulative error claim on the grounds that he had not demonstrated counsel's performance was deficient in any respect. (Exh. 43 at 4.)[6] The Nevada Court of Appeals upheld each of the trial court's decisions on the ineffective assistance claims as "supported by substantial evidence and . . . not clearly wrong," noting further that petitioner "failed to demonstrate he was prejudiced by counsel's representation." (*Id.*)

Petitioner's first claim was that counsel was ineffective for failing to have a competency evaluation performed on him. The Nevada Court of Appeals essentially adopted the trial court's findings as to this claim, accurately summarizing them as follows:

---

[6]Citation is to the page of the original document.

11

> Battle's competency claim was a bare allegation which was insufficient to prove counsel's ineffectiveness. The only evidence he presented of his alleged incompetence were statements he pulled from the record and presented out of context. Battle's direct-examination was coherent and his few nonresponsive answers appear to have been given for strategic reasons. Battle's cross-examination testimony was combative, manipulative, and difficult, but this behavior did not provide a basis for determining he was legally incompetent to stand trial. Furthermore, Battle made no showing that a competency evaluation would have revealed he was incompetent to stand trial or would have provided evidence helpful in mitigating his sentence.

(Exh. 43 at 2; *see also* Exh. 39 at 4-5.) The state courts' rejection of this claim was not objectively unreasonable. Even with counsel representing him in his state postconviction proceedings, petitioner proffered no evidence that he was incompetent to stand trial or that he had any mental health issues at all. He therefore established neither deficient performance nor prejudice with respect to this claim.

Petitioner's second claim was that counsel was ineffective for failing to review Martinez's prior testimony. The Nevada Court of Appeals adopted the trial court's findings, which it accurately summarized as follows:

> The district court found Battle failed to allege specific facts as to what value Martinez's *Petrocelli* hearing testimony may have had and how it would have impacted the outcome of the trial. Counsel's cross-examination of Martinez without using her *Petrocelli* testimony was so effective that the State dropped the deadly weapon enhancement. And counsel would have been remiss in cross-examining Martinez about her *Petrocelli* hearing testimony because the examination would have opened the door to the admission of damaging evidence. Accordingly, Battle failed to demonstrate prejudice in this regard.

(Exh. 43 at 2-3; *see also* Exh. 39 at 5-6.) The state courts' rejection of this claim was not objectively unreasonable. Petitioner has not established that any of Martinez's prior testimony would have been helpful to his case, and it was reasonable for counsel to avoid using it at trial because doing so could have opened the door to questions about the case in which the testimony was provided — the K-Mart case. Petitioner has therefore failed to establish deficient performance or prejudice with respect to this claim.

Petitioner's third claim was that trial counsel failed to investigate the K-Mart case, which prevented him from effectively advising petitioner with respect to his decision to

///

12

1  testify, including explaining what facts or statements might open the door to questions
2  about the incident. The trial court's findings rejecting this claim were as follows:[7]

> Battle contends that his trial counsel failed to adequately prepare and investigate because he did not review the police report and declaration of arrest from C271504. This Court finds that Battle cannot establish that counsel acted unreasonably or that he was prejudiced. Moreover, Battle does not allege any specific facts regarding prejudice to his case. Although counsel may not have seen the report prior to Battle's testimony, counsel did review the report prior to this Court allowing any questions regarding the other case. Once counsel had time to review the police report, this Court held a hearing on the admission of the evidence outside the presence of the jury.
>
> The Court finds that counsel made a cogent argument that the evidence the State sought to admit was improper character evidence because his comments addressed only the character of his daughters, not of his own actions; that it was overly prejudicial; and that the lack of specifics regarding the parties involved in the other incident in the report indicated that it was not sufficient to support the State's position. This Court ruled that it was impeachment evidence and was admissible only because Battle opened the door by testifying that his children had "never" done anything of this nature and that he had never been with his children when they had stolen anything more than a grape. Battle is the one who opened the door for the admission of the evidence, despite repeated warnings not to do so. Moreover, this Court finds that Battle was well aware of the possibility of being impeached with the facts of his 'other case.' Battle was warned on the record that his testimony could open the door to impeachment, and he was specifically warned by this Court before he testified that evidence regarding the other case would be inadmissible unless he opened the door. Accordingly, this Court finds that Battle cannot establish prejudice because it was his own actions, not the actions of counsel, which opened the door to impeachment evidence admitted over counsel's cogent objection. Moreover, this Court finds that Battle has not established that, had counsel viewed the police report prior to trial, the outcome of the trial would have been different. As such, Battle's claim fails because he has failed to establish the prejudice prong under *Strickland*.

(Exh. 39 at 6-7.) The state courts' rejection of this claim was not objectively unreasonable.

Petitioner himself opened the door by testifying that his children had never stolen anything before, spontaneously and not in response to any question of his counsel, after being advised not to talk about the K-Mart incident and to answer only his counsel's

---

[7]While it generally upheld rejection of petitioner's failure to investigate claim, the Nevada Court of Appeals did not specifically discuss petitioner's assertion that the failure prevented his attorney from adequately counseling him regarding his decision to testify. The trial court's opinion is therefore the last reasoned state court decision on this claim.

13

questions.[8] Given petitioner's clear penchant during trial to answer questions that were not asked, there is no reasonable probability that even if counsel had advised petitioner to avoid making such claims that petitioner would have heeded his advice. Further, counsel made the best arguments he could make to avoid admission of the evidence, and petitioner has not shown that the arguments would have been more effective had counsel known more about the K-Mart case. Moreover, even assuming counsel's performance was deficient and that he could have prevented petitioner from opening the door had he investigated the case, the Court is not persuaded that the outcome of the trial would have been any different had that evidence not come in. The State was not allowed to present extrinsic evidence about the K-Mart incident, and petitioner denied on the stand that the children were involved. If the jury otherwise found petitioner credible, it is reasonably likely they would have believed his denial, as well. As is clear, the jury found Martinez's testimony credible. And Martinez testified that petitioner repeatedly told her he could take anything he wanted as his children walked out of the store with unpaid merchandise. Her testimony alone was sufficient to support the conviction in this case. Accordingly, petitioner cannot establish prejudice from counsel's failure to investigate.

Petitioner's fourth claim was that counsel was ineffective for failing to explain to him the scope of the impeachment questions the court authorized the prosecutor to ask. The Nevada Court of Appeals accurately summarized the trial court's decision on this claim as follows:

---

[8]In his reply, petitioner maintains that his children were *not* involved in the K-Mart incident. (ECF No. 15 at 2.) This assertion was never presented to the Nevada Supreme Court, (see Exh. 41), and thus is neither exhausted nor incorporated by reference in the petition. The Court will not consider claims raised for the first time in reply, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."), and cannot at any rate decide this unexhausted claim. Nevertheless, the Court notes that if it is true that his children were not involved, he cannot establish ineffective assistance of counsel. If there were no indication petitioner's children were involved in the K-Mart theft, counsel would have had no reason to believe that petitioner could open the door to the incident by claiming his children had never stolen anything. Thus, petitioner would not be able to establish either deficient performance or prejudice.

14

> The district court found Battle was removed from the courtroom during the hearing on the impeachment evidence because he refused to stop interrupting the hearing despite numerous warnings. Even if counsel had requested time to discuss the impeachment questions with Battle, the district court would not have granted the request because Battle had been repeatedly admonished to answer only the questions asked, not to interrupt, and he would not be granted a mistrial. And Battle cannot demonstrate prejudice because his testimony regarding the knife was stricken, the jury had previously received a limiting instruction, and the deadly weapon enhancement had already been dropped.

(Exh. 43 at 3; *see also* Exh. 39 at 7-8.)

The state courts' rejection of this claim was not objectively unreasonable. By the time the hearing in which the scope of impeachment was discussed was taking place, petitioner had already opened the door to the evidence. Thus, the only potential harm that occurred due to petitioner's ignorance of the scope of impeachment was that he — again repeatedly — mentioned that a knife was involved in the K-Mart incident. The Court would point out that petitioner's comments were unsolicited and repeated despite attempts of the court and counsel to reign him in. Moreover, the comments were stricken and the jury had been instructed to consider the incident only as it pertained to petitioner's credibility; petitioner's use of a knife was irrelevant to his credibility. Finally, petitioner's removal from the courtroom during the impeachment discussion was a result of his own actions, and the trial court indicated that given his behavior any request from counsel to confer with petitioner would have been denied. Having reviewed the trial record, this Court is persuaded that this is not an unreasonable determination of the facts. Accordingly, petitioner has established neither deficient performance nor prejudice with respect to this claim.

Finally, petitioner asserts that appellate counsel was ineffective for failing to file a petition for rehearing. The Nevada Court of Appeals accurately summarized the trial court's finding with respect to this claim as follows:

> The district court found Battle failed to explain what facts the Nevada Supreme Court mistakenly relied upon or what law the Nevada Supreme Court misapprehend [sic]. Instead, Battle merely summarized the contents of his argument on appeal and the Nevada Supreme Court's decision regarding his argument. Accordingly, Battle failed to establish counsel's

15

performance was deficient or prejudice arising from counsel's performance.

(Exh. 43 at 3-4; *see also* Exh. 39 at 8-9.) The state courts' rejection of this claim was not objectively unreasonable. On direct appeal, petitioner had argued that the use of a child enhancement requires that the children assist the adult with the *adult's* criminal scheme, not the other way around, and that the trial court had erred in rejecting an instruction to this effect — his theory of the case instruction. (Exh. 21 at 8-18.)[9] In his postconviction petition, petitioner argued that the Nevada Supreme Court had misapprehended this argument as a sufficiency of the evidence argument. (Exh. 41.)

Petitioner cannot show deficient performance or prejudice. The Nevada Supreme Court addressed the petitioner's claim, holding that the petitioner's proposed instruction on his "theory of the case" "contained incorrect statements of the law." (Exh. 43 at 3.)[10] It was therefore not deficient for counsel to fail to file a petition for rehearing nor, for the same reason, did such failure prejudice petitioner.

For all the above reasons, the state courts' decision to reject petitioner's cumulative error claim based on counsel's conduct was not objectively unreasonable. Petitioner failed to show any deficient performance. But even if some or all of the above alleged errors constituted deficient performance, petitioner cannot, in light of all the evidence presented at trial, establish that they caused him prejudice in the cumulative. Petitioner is not therefore entitled to relief on Ground 1(a).

### 2. Ground 2(a)

Ground 2(a) asserts that petitioner's counsel was ineffective for failing to obtain a competency evaluation of plaintiff. As discussed above, the Nevada Court of Appeals affirmed the rejection of this claim on the grounds that it was a bare allegation unsupported by any evidence that petitioner was incompetent to stand trial, and the

///

---

[9]Citation is to page in the original document.
[10]*Id.*

16

Court does not find this determination objectively unreasonable. (Exh. 43 at 2.) Petitioner is not therefore entitled to relief under Ground 2(a).

### 3. Ground 3

In Ground 3, petitioner asserts that the trial court failed to properly instruct the jury on *actus reus* and *mens rea* requirement of the crime of robbery with the assistance of a child and improperly denied petitioner's proposed theory of case instructions, violating his Fifth, Sixth and Fourteenth Amendment rights to adequate jury instructions. (ECF No. 1 at 7.) This claim is related to the ineffective assistance of appellate counsel claim discussed above. The Nevada Supreme Court rejected this claim as follows:

> In support of his argument that the jury was not properly instructed, Battle claims that a conviction for robbery with the assistance of a child requires proof of specific intent. We disagree. "This court reviews a district court's decision to issue or not issue a particular jury instruction for an abuse of discretion." Here, Battle's proposed instructions contained incorrect statements of the law. Additionally, robbery is a general intent crime, and NRS 193.162 does not require proof of a specific intent. And although the jury was not provided with a definition of "with the assistance of a child," we conclude that the phrase does not have a technical legal meaning and the words were used in their commonly understood, ordinary sense requiring no further explanation. Therefore, we conclude that the district court did not abuse its discretion in the settling of jury instructions.

(Exh. 23 at 3-4 (internal citations omitted).) The state courts' decision was not contrary to, or an unreasonable application of, clearly established federal law.

As an initial matter, errors of state law are not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Thus, petitioner cannot challenge the Nevada Supreme Court's holdings that robbery is a general intent crime and that "assistance of a child" does not require a technical legal definition, or its implicit rejection of petitioner's claim that the assistance of a child enhancement applies only when a child helps an adult commit the adult's crime.

To obtain federal habeas relief based on an improper jury instruction, petitioner must establish that the instruction so infected the entire trial that the resulting conviction violates due process. *Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir.1993); *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The

17

1 question is whether the instructional "error, in the whole context of the particular case, had a substantial and injurious effect on the jury's verdict." *Calderon v. Coleman*, 525 US. 141, 147 (1998). Where a petitioner alleges that the trial court refused to give an instruction, his burden is "especially heavy"; "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155. In reviewing jury instructions, the court inquires as to whether the instructions as a whole were misleading or inadequate to guide the jury's deliberation. *United States v. Garcia-Rivera*, 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega*, 179 F.3d 793, 806 n. 16 (9th Cir.1999) (internal citations omitted). "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Boyde v. California*, 494 U.S. 370, 378 (1990). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

Petitioner has not established that the court's failure to give instructions on the *actus reus* and *mens rea* of robbery "with the assistance of a child" rendered his trial fundamentally unfair, particularly as his proposed instructions misstated state law. Accordingly, petitioner is not entitled to relief on Ground 3.

As a final matter, the Court notes that petitioner's reply contains several arguments or claims that were either withdrawn after the Court found them unexhausted or do not appear in the petition at all, including sufficiency of the evidence, due process and fair trial based on petitioner's being restrained to the witness chair, due process and fair trial based on bias of the presiding trial court judge, ineffective assistance of counsel claims based on the failure to investigate, interview witnesses or prepare a defense, overall cumulative error, and due process and fair trial based on the state court's admission of the K-Mart incident without sufficient proof. (*See* ECF No. 15 at 1, 5-9.) Again, the Court will not consider any claims that have been withdrawn or that were raised for the first time in reply. *Zamani*, 491 F.3d at 997.

///

## IV. CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

## V. CONCLUSION

In accordance with the foregoing, it is hereby ordered that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is denied on its merits, and this action is therefore dismissed with prejudice.

It is further ordered that petitioner's latest motion to expedite (ECF No. 23), filed on March 30, 2018, is denied as moot.

It is further ordered that the Court denies petitioner a certificate of appealability, as reasonable jurists would not find the Court's decision to be debateable or wrong, for the reasons discussed herein.

///

///

It is further ordered that the Clerk of Court enter final judgment accordingly and close this case.

DATED THIS 10th day of April 2018.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE